UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DONALD GLENN ESTES,<br><br>Petitioner,<br><br>v.<br><br>RENEE BAKER, *et al.*,<br><br>Respondents. | Case No. 3:13-cv-00072-MMD-WGC<br><br>ORDER |

I. **INTRODUCTION**

This action is a petition for writ of habeas corpus by Donald Glenn Estes, a Nevada prisoner. The action is before the Court with respect to the merits of the claims in Estes' habeas petition. The Court will deny the petition.

II. **BACKGROUND**

In its opinion on Estes' direct appeal, the Nevada Supreme Court summarized the relevant background of Estes' case as follows:

> Appellant Donald Estes sexually assaulted a minor, B.C., in a desert area near Las Vegas. The State charged Estes with six counts of sexual assault of a minor under the age of 14 years, two counts of lewdness with a child under the age of 14 years, two counts of battery with intent to commit a crime, two counts of coercion, two counts of preventing or dissuading a person from testifying or producing evidence, and one count of first-degree kidnapping. Based upon preliminary findings that Estes was not competent to stand trial, the district court twice committed him to Lake's Crossing Center for Mentally Disordered Offenders. [Footnote: Lake's Crossing is operated by the Nevada Division of Mental Health and Development Services.] Relying upon evaluations provided by Lake's Crossing staff, the district court eventually found Estes competent to stand trial.

Estes pleaded not guilty by reason of insanity and the case proceeded to trial. He called no experts and testified as the sole defense witness. In this, he recounted all of his mental health problems beginning as a young adult and claimed that medication (lithium) prescribed for diagnosed bipolar disorder caused him to abduct and assault B.C. He further admitted much of the charged misconduct, stating that if "B.C. said he did it," he probably did.

In rebuttal, the State presented the testimony of three members of the Lake's Crossing staff: Elizabeth Neighbors, Ph.D., a forensic psychologist and facility director; Hale Henson, M.D., psychiatrist; and A.J. Coronella, a licensed clinical social worker. All three either observed or treated Estes during the evaluation process.

Dr. Neighbors testified concerning psychological testing of Estes that revealed occasional malingering, *i.e.*, feigned mental illness. She also testified that neither she, nor members of Estes' treatment team, observed him in a psychotic state or viewed him as incompetent during his second commitment. Dr. Henson opined that Estes attempted to present a history of mental illness to avoid more severe prosecution, that Estes did not suffer from lithium poisoning, and that Estes desired to be medicated to support his claim that he had a disabling medical condition.

Doctors Neighbors and Henson also testified to a reasonable degree of medical certainty that, under the *M'Naughten* standard, [footnote omitted] Estes knew right from wrong and suffered from no mental condition that would impair his judgment during the alleged incidents with B.C. More particularly, Dr. Neighbors stated that Estes' behavior as reported seemed deliberate and thoughtful. Both derived their opinions from police reports and statements to the police made by Estes and B.C.

The social worker, A.J. Coronella, testified to Estes' interest in preparing an insanity defense, as revealed in a discussion with him during her "legal process" class at Lake's Crossing. She also recounted his comment to her, in an interview, that an affair between his wife and brother was the underlying reason for his divorce. The State elicited the latter statement in response to Estes' testimony that he and his wife divorced because of his mental illness.

The jury convicted Estes on all counts. The district court imposed a series of concurrent and consecutive sentences totaling 40 years imprisonment and ordered Estes to register as a sex offender upon his eventual release. The court further awarded Estes 898 days' credit for time served in local custody before sentencing.

*Estes v. State*, 122 Nev. 1123, 1129-30, 146 P.3d 1114, 1118-19 (2006); (Exh. 47 (ECF No. 18-5) (Except where otherwise indicated, the Exhibits referred to in this order were filed by Estes, and are found in the record at ECF Nos. 14-19.).)

On appeal, in pertinent part relative to his petition in this case, Estes raised issues regarding the admission of testimony of the three Lake's Crossing employees, and

2

regarding the trial court's refusal to instruct the jury regarding involuntary intoxication. (*See* Appellant's Opening Brief, Exh. 41 (ECF No. 17-9).) The Nevada Supreme Court rejected Estes' claims with respect to those issues. *See Estes v. State*, 122 Nev. 1123, 146 P.3d 1114 (2006); (Exh. 47 (ECF No. 18-5).) Ruling on other issues, the Nevada Supreme Court reversed Estes' convictions on one count of battery with intent to commit a crime and two counts of lewdness with a child under the age of fourteen years, and remanded to the state district court, for, among other things, further consideration of the two counts of preventing or dissuading a person from testifying or producing evidence. (*See id.*) The Nevada Supreme Court denied Estes' petition for rehearing on March 1, 2007. (*See* Order Denying Rehearing, Exh. 52 (ECF No. 18-10).) The United States Supreme Court denied Estes' petition for a writ of certiorari on October 1, 2007. (*See* Notice of Denial of Petition for Writ of Certiorari, Exh. 56 (ECF No. 18-14).)

On remand, in the state district court, the court dismissed the two counts of preventing or dissuading a person from testifying or producing evidence, and Estes' sentences on those convictions were vacated. (*See* Second Amended Judgment of Conviction, Exh. 53 (ECF No. 18-11).)

On November 28, 2007, Estes filed a petition for writ of habeas corpus in the state district court. (*See* Petition for Writ of Habeas Corpus, Exh. 57 (ECF No. 18-15).) Counsel was appointed for Estes, and, with counsel, Estes filed supplemental briefing in support of his habeas petition. (*See* Order of Appointment, Exh. 61 (ECF No. 19); Supplemental Brief in Support of Petition for Writ of Habeas Corpus, Exh. 63 (ECF No. 19-2); Second Supplemental Brief in Support of Petition for Writ of Habeas Corpus, Exh. 64 (ECF No. 19-3).) The state district court held an evidentiary hearing on April 7, 2011. (*See* Transcript of Evidentiary Hearing, Exh. 68 (ECF No. 19-8).) On June 14, 2011, the state district court denied Estes's petition in a written order. (*See* Findings of Fact, Conclusions of Law and Order, Exh. 71 (ECF No. 19-11).) Estes appealed, and the Nevada Supreme Court affirmed on December 12, 2012. (*See* Order of Affirmance, Exh. 76 (ECF No. 19-16).)

1    Estes initiated this federal habeas corpus action on February 14, 2013, by filing a
2    *pro se* habeas corpus petition (ECF No. 4). Counsel was appointed to represent Estes.
3    (*See* Order entered April 11, 2013 (ECF No. 3); Notice of Appearance of Counsel (ECF
4    No. 8).) With counsel, Estes filed an amended petition for writ of habeas corpus — the
5    operative petition in the case — on November 12, 2013 (ECF No. 20).)

6    Respondents filed a motion to dismiss on January 15, 2014 (ECF No. 25),
7    contending that certain of Estes' claims are unexhausted in state court. The Court denied
8    the motion to dismiss. (*See* Order entered July 22, 2014 (ECF No. 28).) Respondents
9    then filed an answer (ECF No. 29), and Estes filed a reply (ECF No. 34).

10   On May 30, 2017, the Court ordered respondents to expand the record, pursuant
11   to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts,
12   by filing, as an Exhibit, a copy of the transcript of Estes' statement to the police, which
13   was admitted into evidence at trial. (*See* Order entered May 30, 2017 (ECF No. 35).)
14   Respondents complied with that order, by filing the transcript as an Exhibit on June 19,
15   2017 (ECF No. 36). Estes responded to that filing (ECF No. 37), stating that he has no
16   objection to the Court's consideration of the Exhibit, but stating that his birthdate and
17   Social Security number should be redacted from the Exhibit. On June 21, 2017, the Court
18   ordered the June 19, 2017, filing sealed, and ordered respondents to file a redacted
19   version of the Exhibit. (*See* Order entered June 21, 2017 (ECF No. 38).) On June 22,
20   2017, respondents filed the Exhibit with Estes' birthdate and Social Security number
21   redacted out (ECF No. 39).

22   **III.    SUBSTITUTION OF RESPONDENT WARDEN**

23   The Court observes that Robert LeGrand, the named respondent warden, is no
24   longer the warden of Lovelock Correctional Center, the prison where Estes is
25   incarcerated. Renee Baker is now the warden. Therefore, pursuant to Federal Rule of
26   Civil Procedure 25(d), the Court will direct the Clerk of the Court to substitute Renee
27   Baker for Robert LeGrand as the respondent warden on the docket for this case.
28   ///

## IV. DISCUSSION

### A. Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

///

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**B.     Ground 1**

In Ground 1 of his amended habeas petition, Estes claims that his federal constitutional rights were violated because, following his commitment to Lake's Crossing, a state mental health facility, and after he was found competent to proceed to trial, the prosecution was allowed, in its rebuttal case at trial, to use information gathered during Estes' commitment to refute his claim that he was legally insane when he committed the crimes in this case. (*See* First Amended Petition (ECF No. 21) at 17-19.) Estes' claim concerns the testimony of Elizabeth Neighbors, Ph.D. (Transcript of Trial, March 12, 2004, Exh. 33 at 6-78 (ECF No. 17, pp. 3-21)), Adrianne J. Coronella (*Id.* at 78-103 (ECF No. 17 at 21-27)), and Howard Hale Henson, M.D. (*Id.* at 103-45 (ECF No. 17 at 27-38)).

Estes asserted this claim on his direct appeal. (*See* Appellant's Opening Brief, Exh. 41 at 15-23 (ECF No. 17-9 at 25-33). In its ruling on this claim, the Nevada Supreme Court reviewed the applicable Nevada and federal case law, and, relying primarily on *Buchanan v. Kentucky*, 483 U.S. 402 (1987), rejected Estes' claim that his constitutional rights were violated. *See Estes*, 122 Nev. at 1131-36, 146 P.3d at 1119-23. The Nevada Supreme Court ruled that "when the defendant places his sanity or mental capacity at issue, a defendant's right to protection under the Fifth and Fourteenth Amendments from the disclosure of confidential communications made during a court-ordered psychiatric

6

evaluation relates only to the incriminating communications themselves." *Estes*, 122 Nev. at 1133, 146 P.3d at 1121. The Nevada Supreme Court went on: "[I]f the defendant seeks to introduce the evaluation or portions of it in support of a defense implicating his or her mental state, the prosecution may also rely upon the evaluation for the limited purpose of rebuttal." *Estes*, 122 Nev. at 1133-34, 146 P.3d at 1121. Turning to the specific testimony at issue, the Nevada Supreme Court ruled, as follows, regarding Coronella's testimony:

> Ms. Coronella testified to statements made by Estes during a "legal process" class she conducted at Lake's Crossing, in which he discussed his interest in preparing an insanity defense. She also testified to another statement he made in the course of an interview, that the reason for his divorce was that his wife had an affair with his brother. We find no error in connection with any of this testimony. First, we conclude that the discussion concerning the preparation of an insanity defense was properly admitted to rebut his claims of ongoing mental illness. Nothing in his statements was incriminatory or the product of an interrogation, and certainly, a statement is not "incriminatory" merely because it tends to show that the defendant is sane. Second, his statements during the evaluation concerning the cause of his divorce, his brother's affair with his wife, were admissible as to impeach his testimony at trial that his mental illness precipitated the end of his marriage. Again, none of this information was directly inculpatory or incriminating. Rather, it related to the validity of Estes' insanity defense.
>
> Estes also generally claims that Ms. Coronella improperly testified as to his sanity based upon their interactions at Lake's Crossing. We disagree. As stated, this testimony violates neither the Fifth nor the Fourteenth Amendments because Estes placed his sanity in issue and because the testimony does not describe any statements by Estes regarding the underlying crimes.

*Estes*, 122 Nev. at 1134-35, 146 P.3d at 1122 (footnotes omitted). With regard to the testimony of Neighbors and Henson, the Nevada Supreme Court ruled as follows:

> Relying upon [*Esquivel v. State*, 96 Nev. 777, 617 P.2d 587 (1980)] and [*Winiarz v. State*, 104 Nev. 43, 752 P.2d 761 (1988)], Estes similarly claims that the district court erred in allowing the testimony of Dr. Neighbors and Dr. Henson because they attacked Estes' credibility. In this, he challenges Dr. Neighbors' testimony that psychological testing indicated that Estes occasionally feigned mental illness, and that neither
>
> she, nor members of her treatment team, observed Estes in a psychotic state. With respect to Dr. Henson, Estes takes issue with his testimony opining that, based on medical records, Estes did not suffer from lithium poisoning and that Estes had attempted to present a history of mental illness to avoid prosecution. Estes also claims error with Dr. Henson's testimony that Estes desired to be medicated to demonstrate that he had a disabling mental condition. We disagree. In *Esquivel* and *Winiarz*, while we

7

discerned error in the use of the defendant's statements from a psychiatric interview to attack the defendant's credibility, the defendants in those cases, as noted, did not place their sanity at issue. And, again, the ruling in *Winiarz* did not relate precisely to the Fifth Amendment, but to the permissible scope of expert opinion. Finally, the testimony given by Drs. Henson and Neighbors was within their stated areas of expertise and did not reveal their confidential communications other than by inference.

*Estes*, 122 Nev. at 1135, 146 P.3d at 1122-23 (footnotes omitted). In a footnote, the Nevada Supreme Court added:

> We have considered and rejected Estes' claims that the State failed to provide notice of its rebuttal experts, that the State failed to properly qualify Dr. Neighbors as an expert, and that lack of notice to counsel of the psychiatric interviews violated his Sixth Amendment right to counsel. Counsel was fully aware of the commitment and the responsibilities of the staff at Lake's Crossing.

*Estes*, 122 Nev. at 1136 n. 37, 146 P.3d at 1123 n. 37.

At the conclusion of its opinion, the Nevada Supreme Court summarized its ruling on this issue as follows:

> When the prosecution seeks to use a court-ordered psychiatric evaluation to rebut an insanity defense the prosecution may not utilize the portions of the evaluation containing the defendant's statements that directly relate to culpability for the crimes charged, unless the defendant was first informed of his Fifth Amendment rights and has agreed to waive them. However, the prosecution may use other portions of the evaluation to rebut an insanity defense. In line with the above, we conclude that the prosecution did not violate Estes' rights in its use of information from Estes' court-ordered commitment.

*Estes*, 122 Nev. at 1145-46, 146 P.3d at 1129.

In *Estelle v. Smith*, 451 U.S. 454 (1981), the Supreme Court held that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Estelle*, 451 U.S. at 468. Subsequently, however, in *Buchanan v. Kentucky*, 483 U.S. 402 (1987), the Supreme Court limited the rule of *Estelle*, holding that evidence obtained in the course of a pre-trial psychiatric evaluation may be introduced at trial to rebut the defendant's assertion of an insanity defense, so long as the evidence does not include incriminating information regarding the facts of the crime. *See Buchanan*, 483 U.S. at 424; *see also Kansas v.*

*Cheever*, 134 S.Ct. 596 (2013) (reaffirming rule announced in *Buchanan*); *Pawlyk v. Wood*, 248 F.3d 815, 827-28 (9th Cir. 2001) ("*Estelle* and *Buchanan* established, and placed counsel on notice, that when a defendant places his mental status at issue and presents favorable evidence from a psychiatric evaluation, he waives confidentiality as to evaluations unfavorable to his defense."), *cert. denied*, 534 U.S. 1085 (2002).

In this case, Estes put his mental state at issue by means of his own testimony, and he testified about his stays at Lake's Crossing in an apparent attempt to substantiate his defense based on his mental state at the time of the crimes. *See* Testimony of Donald Glenn Estes, Trial Transcript, March 11, 2004, Exh. 31, pp. 81-83 (ECF No. 16-2, p. 22)); *see also* Reply (ECF No. 34), pp. 24-25 (acknowledging that Estes testified about his stay at Lake's Crossing in attempt to support involuntary intoxication defense). In response, in its rebuttal case, the prosecution called Neighbors, Coronella and Henson to testify about Estes' mental state, as observed by them at Lake's Crossing. The testimony of Neighbors, Coronella and Henson did not involve the facts regarding Estes' underlying crimes; rather, their testimony involved Estes' interest in asserting a defense based on his mental state, and their observations and opinions regarding his mental state. While Estes did not introduce any expert testimony or other evidence beyond his own testimony to support his defense, his testimony raised the subject of his stays at Lake's Crossing and the question of his mental state at the time of the crimes. Under these circumstances, this Court does not find unreasonable the state supreme court's reading of *Estelle* and *Buchanan* to allow the State to respond by calling Lake's Crossing staff to testify as they did without violating Estes' constitutional rights.

Estes has failed to meet his burden of showing that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, the Court denies relief on Ground 1.

///

**C. Ground 2**

In Ground 2, Estes claims that his constitutional rights were violated because the trial court declined to give a jury instruction regarding involuntary intoxication. (*See* First Amended Petition at 20-21.)

Estes asserted this claim on his direct appeal. (*See* Appellant's Opening Brief, Exh. 41 at 25-27 (ECF No. 17-9 at 35-37).) The Nevada Supreme Court ruled as follows:

> Estes claims that the district court violated his due process rights when it denied his request to issue jury instructions on involuntary intoxication. In this, the court found that Estes presented no competent evidence that he suffered from involuntarily induced lithium toxicity. Although a defendant in a criminal case is entitled to a jury instruction on his theory, no matter how weak or incredible it may be, and district courts have a duty to correct an inaccurate or incomplete theory-of-defense instruction, the instruction must be supported by some competent evidence in the record. Because Estes offered no evidence other than his irrelevant lay opinion that he suffered from lithium toxicity, and given that the only competent evidence on this issue, that given by Dr. Henson, was to the contrary, we discern no error in the court's refusal of the involuntary intoxication theory. But even if the district court erred in refusing the proffered instructions, we further conclude that any error is harmless beyond a reasonable doubt given the overwhelming state of the evidence against Estes.

*Estes*, 122 Nev. at 1138, 146 P.3d at 1124 (footnotes omitted).

Estes cites *Mathews v. United States*, 485 U.S. 58 (1988), for the proposition that he had a federal constitutional right, clearly established in Supreme Court precedent, to a jury instruction regarding his affirmative defense. In *Mathews*, the Supreme Court stated that "[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews*, 485 U.S. at 63, citing *Stevenson v. United States*, 162 U.S. 313 (1896). However, *Mathews* went to the Supreme Court through a direct appeal from a judgment of conviction in a federal district court. In *Mathews*, the Supreme Court was acting solely within its supervisory role over criminal procedure in federal courts. *See id.* The *Mathews* Court did not apply any federal constitutional law. Estes does not cite to any Supreme Court precedent clearly establishing that a criminal defendant has a federal constitutional right to a jury instruction regarding his affirmative defense.

Moreover, even if the principle that Estes draws from *Mathews* were a basis, within the meaning of the AEDPA, for his federal habeas claim, Estes' claim would still fail. The Court does not find unreasonable the Nevada Supreme Court's ruling that Estes' self-serving lay opinion was insufficient for a reasonable jury to find that he was affected by involuntary lithium intoxication at the time of his crimes.

The Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. The Court denies relief on Ground 2.

### D. Ground 3A

In Ground 3A, Estes claims that his constitutional rights were violated as a result of ineffective assistance of his trial counsel, because his trial counsel "failed to obtain an expert and otherwise investigate and support Estes' defense theory and testimony that he suffered from mental illness…." (First Amended Petition at 21; *see also id.* at 21-22.)

Estes asserted this claim in his state habeas action. (*See* Second Supplemental Brief in Support of Petition for Writ of Habeas Corpus, Exh. 64 at 3-7 (ECF No. 19-3 at 4-8).) After holding an evidentiary hearing focused primarily on this claim (*see* Transcript of Evidentiary Hearing, Exh. 68 (ECF No. 19-8)), the state district court denied the claim. (*See* Findings of Fact, Conclusions of Law and Order, Exh. 71 (ECF No. 19-11).) In its written order, the state district court ruled:

> Defendant's trial counsel, Christy Craig, testified at the hearing. Ms. Craig testified that she did have Defendant evaluated for competency on two different occasions. Craig testified that she did not look for a Not Guilty By Reason of Insanity ("NGRI") defense based on his past mental illness, because based on her discussions with Defendant, it was his strong belief that the lithium he was taking at the time of the crimes led to his psychotic episode that resulted in these charges. Craig testified that she would have used an expert such as Dr. Dodge Slagle if she planned to use a straight mental health defense, but in light of Defendant's desire to incorporate the effect of the lithium she did not do so. Craig was unable to find an expert to support the lithium theory of defense. Craig testified that she did not believe if another strategy was used the result of his case would have been different, because of the overwhelming evidence of his guilt and the bad interview he had with the police, which would contravene any assertion of insanity.

> Dr. Dodge Slagle testified at the hearing. Dr. Slagle is a psychiatrist that evaluated Defendant three times over the past ten years. Dr. Slagle testified that Defendant's actions at the time of the crime suggested that he had the capacity to appreciate the wrongfulness of his actions. Dr. Slagle testified that based on the facts and information available to him that he would not be able to testify that Defendant was likely Not Guilty By Reason of Insanity at the time of the crime.
>
> * * *
>
> Defendant's claim that trial counsel was ineffective for failing to call an expert witness to present an insanity defense is without merit, because in light of the evidence available, such an expert, such as Dr. Slagle, would not find Defendant Not Guilty by Reason of Insanity, nor would a jury have likely reached such a conclusion.

(Findings of Fact, Conclusions of Law and Order, Exh. 71 at 4-5 (ECF No. 19-11 at 5-6) (paragraph numbering omitted).)

On appeal, the Nevada Supreme Court affirmed, ruling as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to obtain experts to testify regarding appellant's mental health in support of the insanity defense. Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Trial counsel testified that appellant was adamant that poisoning from prescription lithium caused him to be mentally impaired during the incident, but that mental illness did not cause him to commit the crimes. Counsel testified that she investigated potential experts to testify regarding lithium poisoning rendering someone legally insane, but was unable to find any expert willing to provide testimony of that nature. Further, a mental health expert who examined appellant following his conviction testified at the evidentiary hearing that he could not state that appellant was legally insane during the crime. Therefore, appellant fails to demonstrate a reasonable probability of a different outcome had counsel performed additional investigation into expert testimony. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). The district court concluded that counsel did not provide ineffective assistance regarding expert testimony and substantial evidence supports that decision. Therefore, we conclude that the district court did not err in denying this claim.

(Order of Affirmance, Exh. 76 at 2 (ECF No. 19-16 at 3) (footnote omitted).)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

Where a state court has adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable under the AEDPA is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging double deference required for state court adjudications of *Strickland* claims).

The state supreme court's resolution of this claim was reasonable. There was overwhelming evidence of Estes guilt, there was overwhelming evidence that Estes was not legally insane when he committed the crimes, and there is no showing by Estes that any expert testimony could have supported his insanity defense.

It is beyond any reasonable debate that Estes committed the crimes; there was overwhelming evidence: B.C.'s testimony (Testimony of B.C., Trial Transcript, March 10, 2004, Exh. 29 at 28-61 (ECF No. 16 at 8-17)); evidence that, after Estes returned B.C. to his parents, B.C. knew details regarding the remote location where Estes took him against

his will (Testimony of B.C., Trial Transcript, March 10, 2004, Exh. 29 at 52-53 (ECF No. 16 at 14-15); Testimony of Timothy Moniot, Trial Transcript, March 10, 2004, Exh. 29 at 198-202 (ECF No. 16 at 51-52); Testimony of Joel Kisner, Trial Transcript, March 11, 2004, Exh. 31 at. 24-25 (ECF No. 16-2 at 7-8)); evidence that, after Estes returned B.C. to his parents, B.C. knew the color of Estes' underwear (Testimony of B.C., Trial Transcript, March 10, 2004, Exh. 29 at 57-58 (ECF No. 16, at 16); Testimony of George Libbey, Trial Transcript, March 10, 2004, Exh. 29 at 80-81 (ECF No. 16 at 21-22)); evidence that, after Estes returned B.C. to his parents, B.C. knew that Estes had an uncircumcised penis (Testimony of B.C., Trial Transcript, March 10, 2004, Exh. 29 at 58-59 (ECF No. 16 at 16); Testimony of Timothy Moniot, Trial Transcript, March 10, 2004, Exh. 29 at 196-98 (ECF No. 16 at 50-51)); physical signs of sexual abuse observed on B.C.'s body by a doctor (Testimony of Dr. Theresa Vergara, Trial Transcript, March 10, 2004, Exh. 29 at 90-95 (ECF No. 16 at 24-25)); evidence that DNA from Estes' sperm was found on B.C.'s sweatshirt (Testimony of Thomas Wahl, Trial Transcript, March 10, 2004, Exh. 29 at 119-21 (ECF No. 16 at 31-32)); evidence that DNA from Estes' sperm, along with DNA that could have come from B.C.'s saliva, were found on a mouthwash bottle that Estes' forced B.C. to drink from after the sexual assault (Testimony of Thomas Wahl, Trial Transcript, March 10, 2004, Exh. 29 at 110-15 (ECF No. 16 at 29-30)); evidence that DNA from Estes' sperm, along with DNA that could have come from B.C.'s saliva, were found on Estes' underwear (Testimony of Thomas Wahl, Trial Transcript, March 10, 2004, Exh. 29 at 115-17 (ECF No. 16 at 30-31)); evidence that DNA from Estes' sperm, along with DNA that could have come from B.C.'s saliva, were found on Estes' penis (Testimony of Thomas Wahl, Trial Transcript, March 10, 2004, Exh. 29 at 117-19 (ECF No. 16 at 31)); evidence that the zipper on Estes' pants was undone when he got out of his vehicle at the motel when he returned B.C. to his parents (Testimony of Robert Ross Williams, Trial Transcript, March 10, 2004, Exh. 29 at 140-41 (ECF No. 16 at 36-37)); Estes' own testimony, in which he did not deny that B.C. was telling the truth

///

1  (Testimony of Donald Glenn Estes, Trial Transcript, March 11, 2004, Exh. 31 at 78-93,
2  102-103 (ECF No. 16-2 at 21-25, 27)).

3  Furthermore, there was overwhelming evidence indicating that Estes was not
4  legally insane — that he knew the nature, wrongfulness, and illegality of his actions (*see*
5  Jury Instruction Regarding Legal Insanity, Instruction 17, Exh. 32 (ECF No. 16-3 at 22)):
6  evidence that Estes took B.C. to a remote and secluded location to sexually assault him
7  (Testimony of B.C., Trial Transcript, March 10, 2004, Exh. 29 at 36-44 (ECF No. 16 at 10-
8  12)); B.C.'s testimony that Estes threatened to harm or kill him, as well as his mother and
9  father, if he told anyone what Estes did to him (Testimony of B.C., Trial Transcript, March
10  10, 2004, Exh. 29 at 39, 42-44, 48, 59 (ECF No. 16 at 11-13, 16)); B.C.'s testimony that
11  Estes told him that if he said what Estes told him to say about what had happened, Estes
12  would give him money (Testimony of B.C., Trial Transcript, March 10, 2004, Exh. 29 at
13  44 (ECF No. 16 at 12)); B.C.'s testimony that Estes lied to him about where Estes was
14  taking him (Testimony of B.C., Trial Transcript, March 10, 2004, Exh. 29 at 35-37 (ECF
15  No. 16 at 10-11)); B.C.'s testimony that, at the second location where Estes sexually
16  assaulted him, when a car would drive by, Estes would make him "get up so that they
17  wouldn't think of anything" (Testimony of B.C., Trial Transcript, March 10, 2004, Exh. 29
18  at 45 (ECF No. 16 at. 13)); B.C.'s testimony that when Estes forced B.C. to perform
19  fellatio, Estes forced B.C. to swallow his semen (Testimony of B.C., Trial Transcript,
20  March 10, 2004, Exh. 29 at 43-44, 46 (ECF No. 16 at 12-13)); evidence that, after Estes
21  forced B.C. to perform fellatio, Estes forced B.C. to use mouthwash (Testimony of B.C.,
22  Trial Transcript, March 10, 2004, Exh. 29 at 46-48 (ECF No. 16 at 13)); evidence that
23  when Estes returned to the motel with B.C., Estes appearance was not unusual (except
24  for his unzipped pants) and his speech was coherent (Testimony of Robert Ross Williams,
25  Trial Transcript, March 10, 2004, Exh. 29 at 140-41, 144 (ECF No. 16 at 36-37);
26  Testimony of Joel Kisner, Trial Transcript, March 11, 2004, Exh. 31, at 13-14 (ECF No.
27  16-2 at 5)); Estes' statement to the police, in which he denied having sexual contact with
28  B.C. (Transcript of Statement, Respondents' Exh. 2 (ECF No. 39); *see also* Trial

Transcript, March 11, 2004, Exh. 31 at 30 (ECF No. 16-2 at 9) (audio recording of Estes' statement to the police played for the jury at trial)).

The record shows that Estes' trial counsel had no strong ground on which to defend him. Estes' trial counsel was aware that the evidence of Estes' guilt was overwhelming. (*See* Testimony of Christy Craig, Transcript of Evidentiary Hearing, Exh. 68 at 18-19 (ECF No. 19-8 at 19-20).) And, she knew, given the evidence regarding Estes' behavior during and after the crimes, and his statement to the police, that an insanity defense would be unsupportable. (*See id.* at 15-18, 31 (ECF No. 19-8 at 16-19, 32).) She had no reason to believe that she could find an expert to opine that Estes experienced a psychotic episode and was legally insane when he committed the crimes. (*See id.* at 30 (ECF No. 19-8 at 31.) In fact, she was concerned that, with respect to his mental health, Estes might have been malingering. (*See id.* at 11, 22, 26-27 (ECF No. 19-8 at 12, 23, 27-28).) Furthermore, Estes' trial counsel did in fact attempt to find an expert to substantiate Estes' belief that when he committed the crimes he was under the influence of lithium poisoning, but she could not find any expert who would support that theory. (*See id.* at 25 (ECF No. 19-8 at 26).) Estes' trial counsel testified that she believes that the result of Estes' trial would not have been different had she attempted further to find an expert to substantiate an insanity defense. (*See id.* at 31-32 (ECF No. 19-8 at 32-33).)

Moreover, and perhaps most importantly to the resolution of this claim, Estes has never presented any expert opinion that he was legally insane when he committed the crimes. Dr. Slagle, the expert that Estes presented at the state-court evidentiary hearing, did not express such an opinion. (*See* Testimony of Dr. Dodge Slagle, Transcript of Evidentiary Hearing, Exh. 68 at 35-52 (ECF No. 19-8 at 36-53).) Dr. Slagle testified that he believed that Estes was in a manic state when he committed the crimes in this case, but he could not say that Estes met the standard for legal insanity. (*See id.* at 43-44, 50 (ECF No. 19-8 at 44-45, 51).) Notably, Dr. Slagle concluded his testimony as follows:

> Q. Your basic opinion here is that Mr. Estes' actions at the time of the crime suggest that he had the capacity to appreciate the wrongfulness of his behavior. Is that correct?

|    |    |
|----|----|
| 1  | A. That's a part of my opinion, yes. |
| 2  | Q. And that's – I mean, that doesn't really matter whether you – that opinion is based on facts that haven't changed from '01 to '03 to 2010. |
| 3  | |
| 4  | A. That's correct. |
| 5  | Q. And so, you would be no more capable on a retrial to come in and basically testify on behalf of a not guilty by reason of insanity defense based upon the facts of this case, is that fair? |
| 6  | |
| 7  | A. Based on the facts and the information available to me I could not testify that he was likely not guilty by reason of insanity and – at the time of the alleged crime. That's correct. |
| 8  | |
| 9  | * * * |
| 10 | THE COURT: Based on the information you have now, do you believe that [Estes] did not appreciate the nature and quality of his acts that day? |
| 11 | |
| 12 | THE WITNESS: Based on the information available to me from the reports of others as he says he's not able to remember it, such as going to a place where it's less likely that he would be discovered, out in the desert some place. Such as allegedly telling the young man not to tell anybody. You know, those sorts of things to me would be a suggestion that you had some awareness that what you were doing was wrongful. I — those are the things that would lend me to believe that he had some capacity there. Again the symptoms that I think were going on with him at the time would suggest that his judgment was impacted by those symptoms. But the fact that he could make those choices to me suggests that he had some capacity at that time. |

(Testimony of Dr. Dodge Slagle, Transcript of Evidentiary Hearing, Exh. 68 at 49, 51-52 (ECF No. 19-8, pp. 50, 52-53).)

Nor did Dr. Schmidt, an expert retained by Estes, who died before the evidentiary hearing, express an opinion supporting an insanity defense. (*See* Neuropsychological Assessment Report of David L. Schmidt, Ph.D., Exh. 64A (ECF No. 19-4).)

In light of the evidence at trial, and the record of the state-court evidentiary hearing, in this Court's view, the Nevada Supreme Court reasonably rejected Estes' claim that his trial counsel was ineffective for failing to further investigate Estes' mental illness and to further attempt to obtain an expert to support an insanity defense based upon his mental illness. It is plain from the evidence that any further pursuit of such a defense would have been fruitless and would have had no impact on the outcome of Estes' trial.

The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of, *Strickland* or any other United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court denies relief on Ground 3A.

### E.     Ground 3B

In Ground 3B, Estes claims that his constitutional rights were violated, as a result of ineffective assistance of his appellate counsel, because, on his direct appeal to the Nevada Supreme Court, his counsel did not argue that his rights under the Confrontation Clause of the Sixth Amendment were violated at trial as a result of admission of hearsay into evidence. (*See* First Amended Petition at 21-23.) Specifically, Estes challenges the trial court's admission of testimony of Officer Robert Williams, Dr. Theresa Vergara, and Tamara Norris. (*See id.* at 22.)

Estes originally included testimony of Officer Julie Hager within the scope of this claim (*see id.*), but abandoned that part of the claim in his reply. (*See* Reply (ECF No. 34) at 37 ("As such, Estes does not have a viable IAC direct appeal argument as to Officer Julie Hager and should not have included that subpart in his federal petition.").)

In his state habeas action, Estes claimed that his appellate counsel was ineffective for failing to raise an issue regarding hearsay testimony of Williams, Vergara and Norris. (*See* Supplemental Brief in Support of Petition for Writ of Habeas Corpus, Exh. 63 at 14-16 (ECF No. 19-2 at 15-17).) The state district court denied the claim (*see* Findings of Fact, Conclusions of Law and Order, Exh. 71 at 5 (ECF No. 19-11 at 6)), and, on appeal, the Nevada Supreme Court affirmed, ruling as follows:

> [A]ppellant argues that his appellate counsel was ineffective for failing to argue that admission of multiple out-of-court statements by the victim was improper. Appellant fails to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced. Appellate counsel argued on appeal that one of the challenged statements was improperly admitted and this court rejected that argument. *Estes v. State*, 122 Nev. 1123, 1140, 146 P.3d 1114, 1126 (2006). The other challenged statements were properly admitted by the district court under hearsay exceptions for excited utterances and medical examinations. *See* NRS 51.095; NRS 51.115. Therefore, any challenge on direct appeal to admission of those statements would have been futile. *See Ennis v. State*,

> 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006); *see also Archanian v. State*, 122 Nev. 1019, 1029, 145 P.3d 1008, 1016 (2006). Further, given the overwhelming evidence of appellant's guilt, appellant fails to demonstrate a reasonable likelihood of success on appeal had counsel raised additional challenges to admission of these out-of-court statements. Therefore, the district court did not err in denying this claim.

(Order of Affirmance, Exh. 76 at 5 (ECF No. 19-16 at 6).)

This claim is meritless. To the extent that Estes claims that his appellate counsel should have argued that the admission of the testimony of Williams, Vergara and Norris violated his rights under the Confrontation Clause, such an argument would plainly have failed because B.C. and Hager, the individuals who made the out-of-court statements at issue, testified at trial. *See Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) (Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination."); *see also Crawford*, 541 U.S. at 59 n.9 ("Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). And, to the extent that Estes claims that his appellate counsel should have argued that testimony of Williams, Vergara and Norris was inadmissible hearsay under state law, the Nevada Supreme Court's rejection of that claim, on state-law grounds, is authoritative and binding in this federal habeas corpus action. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").

The Nevada Supreme Court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United

///

States Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. The Court denies relief on Ground 3B.

## V.  CERTIFICATE OF APPEALABILITY

The standard for issuance of a certificate of appealability is governed by 28 U.S.C. § 2253(c). The Supreme Court has interpreted section 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Applying this standard, the Court finds that a certificate of appealability is warranted with regard to Ground 1 of Estes' amended petition.

## VI.  CONCLUSION

It is therefore ordered that, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of the Court is directed to substitute Renee Baker for Robert LeGrand, on the docket for this case, as the respondent warden of the Lovelock Correctional Center.

It is further ordered that the First Amended Petition for Writ of Habeas Corpus (ECF No. 21) is denied.

It is further ordered that the petitioner is granted a certificate of appealability with regard to Ground 1 of his first amended petition for writ of habeas corpus. Petitioner is denied a certificate of appealability in all other respects.

It is further ordered that the Clerk of the Court is to enter judgment accordingly.

DATED THIS 13th day of July 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE